**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Arthur Lamar Brown,**

**Plaintiff,**

**-against-**

**City of New York, et al.,**

**Defendants.**

**1:23-cv-05924 (JGLC) (SDA)**

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE JESSICA G.L. CLARKE, UNITED STATES DISTRICT JUDGE:**

Pending before the Court is a motion by Defendants City of New York (the "City"), Warden Ronald Miller ("Miller"), Captain Eddie Vasquez ("Vasquez"), Marcella Marshall ("Marshall") and Chief Charlton Lemon ("Lemon") (collectively, "Defendants") to dismiss the Second Amended Complaint ("SAC") of Plaintiff Arthur Lamar Brown ("Plaintiff"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim.[1] (Defs.' 1/10/25 Not. of Mot., ECF No. 59.)

For the reasons set forth below, it is respectfully recommended that Defendants' motion be GRANTED IN PART and DENIED IN PART, and that Plaintiff be granted leave to file a Third Amended Complaint.

[1] John Doe #1 ("Doe 1"), John Doe #2 ("Doe 2"), John Doe #3 ("Doe 3") and John Doe #4 ("Doe 4") (collectively, the "Doe Defendants") also are named as defendants in the SAC.

## RELEVANT FACTS[2]

Plaintiff's allegations concern several incidents between August 2020 and May 2024 on Rikers Island while he was a pretrial detainee in the custody of the New York City Department of Corrections ("NYCDOC"). (SAC, ECF No. 57, ¶ 1.)

### I. 2020 To 2022 Confinements

On August 13, 2020, Plaintiff alleges that he was confined to pre-hearing detention in the Special Housing Unit ("SHU") when he was served with a hearing disposition that "notified him that [his] infraction was thrown out because of a due process violation." (SAC ¶ 15.) Plaintiff confronted the captain on duty with the disposition and questioned his continued confinement in the SHU. (*Id.*) The captain stated, after an investigation, that Plaintiff still owed 30 days for his two escapes.[3] (*Id.*) Plaintiff alleges that he already had served the required time for his escapes. (*Id.*) The captain never responded to Plaintiff's dispute. (*Id.*) After 30 days in the SHU, Plaintiff was released. (*Id.*)

On June 9, 2021, Plaintiff was transferred to the SHU intake of George R. Vierno Center ("GRVC"). (SAC ¶ 16.) When Plaintiff "requested to be informed of the reason that he was there," the intake captain, after investigation, informed Plaintiff that he owed over 300 days of "box

---

[2] The relevant facts are drawn from Plaintiff's SAC. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). The Court also considers the facts alleged in Plaintiff's Declaration in opposition to the motion to dismiss to the extent that they are consistent with the SAC. *See Schwartz v. Middletown City Sch. Dist.*, No. 23-CV-01248 (KMK), 2024 WL 1257095, at *1 n.4 (S.D.N.Y. Mar. 25, 2024) ("Courts in *pro se* cases routinely consider new facts raised in opposition papers to the extent that they are consistent with the complaint."). For purposes of the pending motion to dismiss, the Court accepts Plaintiff's factual allegations as true and draws all reasonable inferences in his favor. *See City of Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36, 48 (2d Cir. 2017).

[3] Plaintiff had escaped on June 18, 2020 and June 21, 2020. (Pl.'s 3/27/25 Decl., ECF No. 64, ¶¶ 16, 45.)

time." (*Id.)* Plaintiff was not given a hearing. (*Id.*) After 30 days in the SHU, Plaintiff was released and sent to the North Infirmary Command ("NIC").[4] (*Id.*)

On October 11, 2022, without being afforded a hearing, Plaintiff was transferred to the restrictive housing unit ("RHU") on the second floor of the NIC. (SAC ¶ 18.) After protesting, Plaintiff was told that Lemon decided to permanently house him there. (*Id.*) Plaintiff was confined from October 11, 2022 until May 23, 2024 (*i.e.*, 591 days). (*Id.* ¶ 31.) Plaintiff alleges that the air quality in the 6.5 x 5.5-foot cell was poor due to improper ventilation, odors and "carcinogenic pollutants[.]" (*Id.* ¶¶ 19-20, 22-23.) Plaintiff submits that "[t]here was very little water pressure in the sink and the water that did come out was a brownish yellow color," which prevented him from using it out of fear that he would become ill or suffer a permanent health injury. (*Id.* ¶ 24.) The cell contained cracked and peeling lead paint and leftover O.C. spray.[5] (*Id.* ¶ 22.) Plaintiff alleges that, due to openings in the cell, vermin and mice entered and "crawled, gnawed and defecated" on his belongings and living area. (*Id.* ¶ 25.) Plaintiff further alleges that the cell would flood every time it rained. (*Id.* ¶ 26.) Plaintiff submits that he endured severe pain because of the non-ergonomic position in which he was forced to sleep due to rainwater leaks. (*Id.* ¶ 27.)

Plaintiff alleges that, during his confinement, "he was subjected to substantial physical, mental, emotional, and psychological, pain and suffering on a daily basis." (SAC ¶ 51.) He was served undercooked and overcooked food or sometimes no food at all and was deprived of

---

[4] The SAC contains allegations regarding the time period from October 7, 2022 to October 11, 2022. (SAC ¶¶ 17-18.) However, Plaintiff abandons his claims relating to this period. (Pl.'s 3/27/25 Decl. ¶ 287.)

[5] Oleoresin capsicum or O.C. spray, commonly referred to as pepper spray, is a chemical agent derived from the oils of hot peppers. *See McKnight v. Vasile*, No. 11-CV-06328 (MWP), 2017 WL 1176051, at *14 (W.D.N.Y. Mar. 30, 2017).

potable drinking water and fresh air to breathe. (*Id.*) Plaintiff, who is Muslim, alleges that he was unable to attend weekly religious services with others. (*Id.*) Plaintiff further submits that he lived in a constant state of fear and became "severely depressed" while being confined to the cell. (*Id.* ¶¶ 52-53.) Plaintiff suffered from insomnia and developed suicidal thoughts. (*Id.* ¶ 54.) When Plaintiff informed medical staff of his thoughts, he was offered Benadryl to "help him get to sleep." (*Id.* ¶ 55.) Plaintiff alleges that he never was referred for a mental health and/or wellness check. (*Id.*)

**II. <u>Inadequate Medical Assistance And Required Strip Searches</u>**

Prior to November 10, 2022, Plaintiff made several complaints (through sick-call at NIC) about pain radiating from his molar on his left side mandible. (SAC ¶ 32.) Plaintiff felt pain "when he chewed on the left side, [his] tooth was sensitive to hot and cold beverages, and after eating or drinking a throbbing pain lingered." (*Id.*) Plaintiff was given Ibuprofen and placed on a list to see a dentist. (*Id.* ¶ 33.) Plaintiff alleges that, as a condition of receiving medical treatment, he would be subjected to a "strip search with a visual body cavity search." (Pl.'s 3/27/25 Decl. ¶ 65; *see also* SAC ¶ 35.)

On November 10, 2022, Miller and Doe 4 directed that if "Plaintiff did not strip naked he would not receive medical attention." (SAC ¶ 35.) After asserting that he was under no obligation to strip naked to receive medical attention, Plaintiff was taken back to his assigned cell. (*Id.*) Plaintiff alleges that it was falsely logged that he refused to attend the medical appointment. (*Id.*) On multiple other days, Miller and Doe 4 did not allow Plaintiff to attend medical appointments unless he submitted to the visual body cavity strip search, and it was falsely logged that Plaintiff

refused to attend his medical appointments.[6] (*Id.* ¶¶ 39, 42, 45, 47.) However, on or about January 18, 2024, Plaintiff was allowed to go to his medical treatment without submitting to a strip search. (*Id.* ¶ 48.)

As a result of the foregoing incidents, Plaintiff alleges that he suffered from, among other injuries, an inability to chew, insomnia, severe intestinal pain, post-traumatic stress disorder and anxiety. (SAC ¶ 87.)

## PROCEDURAL HISTORY

On July 10, 2023, Plaintiff filed his Complaint in this action against several defendants, including Miller, Vasquez and Lemon. (*See* Compl., ECF No. 1.) On August 17, 2023, District Judge Clarke issued (1) an Order under *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997), for the City to identify three Jane Doe DOC Adjudication Officers (the "*Valentin* Order"), and (2) an Order to Show Cause ("OTSC") why Plaintiff's claims arising from events occurring before June 30, 2020, should not be dismissed as time-barred since the statute of limitation on his claims under 42 U.S.C. § 1983 ("Section 1983") in New York is three years. (8/17/23 Order of Service, ECF No. 9, at 2-5.) On September 20, 2023, Plaintiff's response to the OTSC was filed. (Pl.'s OTSC Resp., ECF No. 13.) On October 13, 2023, the City filed a letter requesting that the Court deny Plaintiff's request that certain claims be deemed timely. (City's 10/13/23 Letter, ECF No. 15.) On October 31, 2023, the City filed its Answer to the Complaint. (City's 10/31/23 Ans., ECF No. 17.)

---

[6] These days included March 15, May 16, July 11, August 10, August 24, September 28, October 18, October 31, November 1, November 3, November 6, November 7 and December 28, 2023. (SAC ¶¶ 39, 42, 45, 47.) On March 7, 2023, Plaintiff alleges that "an ESU team was never dispatched to transport [him] to his scheduled dentist appointment, or the one that was dispatched negligently failed and/or refused to show," and it was falsely logged that he refused to go to the appointment. (*Id.* ¶ 37.)

On November 17, 2023, Judge Clarke issued an Order finding that Plaintiff had not met his burden to demonstrate that his hardships caused the lateness of his filings and ruled that Plaintiff's Section 1983 claims arising from events before June 30, 2020 were time-barred. (11/17/23 Order, ECF No. 18, at 2-3.) Accordingly, Judge Clarke dismissed nine defendants from this action with prejudice and relieved the City from its obligations under the *Valentin* Order for DOC Adjudication Officer Jane Doe No. 1 and DOC Adjudication Officer Jane Doe No. 2.[7] (*Id.*) On November 28, 2023, the City supplied the identity for Adjudication Officer Jane Doe No. 3 pursuant to the *Valentin* Order, and sought to compel Plaintiff to clarify who he intended to sue. (City's 11/28/23 Letter Mot., ECF No. 19.) On November 29, 2023, Judge Clarke granted the City's request and set deadlines for (1) Plaintiff to file an amended pleading clarifying who he intended to sue; (2) Defendants to provide an updated response to the *Valentin* Order; and (3) Plaintiff to file an amended pleading naming the Jane Doe Defendant. (11/29/23 Order, ECF No. 20.) On December 22, 2023, Plaintiff filed a letter response to the November 29, 2023 Order. (Pl.'s 12/22/23 Letter, ECF No. 22.)

On December 26, 2023, this case was referred to the undersigned for general pretrial purposes and dispositive motions requiring a report and recommendation. (12/26/23 Order of Reference, ECF No. 23.) On February 14, 2024, Defendants Miller, Lemon and Vasquez filed their Answer to the Complaint. (2/14/24 Ans., ECF No. 29-1; *see also* 2/15/24 Order, ECF No. 30.)

[7] The defendants dismissed on November 17, 2023, were (1) Captain Moses #1881, (2) Correction Officer Mohamed #7586, (3) Correction Officer Omer #16031, (4) Correction Officer Porter #7592, (5) Correction Officer Wu #11367, (6) Correction Officer Kendall #9028, (7) Correction Officer Mendelsohn #17787, (8) Adjudication Officer Jane Doe #1 and (9) Adjudication Officer Jane Doe #2. (11/17/23 Order at 2-3.)

On March 14, 2024, Plaintiff filed an Amended Complaint alleging claims against the City, Miller, Vasquez, Marshall and Lemon. (Am. Compl., ECF No. 31.) On April 15, 2024, Defendants moved to dismiss the Amended Complaint pursuant to Rules 8 and 12(f) of the Federal Rules of Civil Procedure. (Defs.' 4/15/24 Not. of Mot., ECF No. 35.)

On September 20, 2024, this Court recommended that Defendants' motion to dismiss be granted for failure to comply with Rule 8(a). (9/20/24 R&R, ECF No. 49, at 13.) The Court further recommended that Plaintiff be given leave to file a second amended pleading and provided over five pages of guidance to Plaintiff in drafting his second amended pleading, including the elements of various claims that Plaintiff was seeking to assert. (*Id*. at 13-21.) On October 9, 2024, District Judge Clarke adopted this Court's recommendations. (10/9/24 Order, ECF No. 51.)

On December 6, 2024, Plaintiff filed his SAC, which is now the operative pleading before the Court. (*See* SAC.) The SAC alleges claims against the City, Miller, Lemon and various Doe Defendants.[8] (SAC ¶¶ 4-10.)

On January 10, 2025, Defendants filed their motion to dismiss that is now before the Court, as well as an accompanying declaration and memorandum of law. (*See* Defs.' 1/10/25 Not. of Mot.; O'Connor Decl., ECF No. 60; Defs.' 1/10/25 Mem., ECF No. 61.) On March 27, 2025, Plaintiff filed his Declaration in opposition to the motion to dismiss. (*See* Pl.'s 3/27/25 Decl.) On April 25, 2025, Defendants filed their reply memorandum. (*See* Defs.' 4/25/25 Reply, ECF No. 70.)

[8] Plaintiff abandoned his claims against Vasquez and Marshall. (Pl.'s 3/27/25 Decl. ¶ 286.) Miller and Lemon, who are the two remaining individuals named as defendants in the SAC, are referred to below as the "Individual Defendants."

**LEGAL STANDARDS**

A complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In deciding a motion to dismiss, the Court "must accept as true all of the allegations contained in a complaint[,]" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). "Determining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

Where, as here, a plaintiff is proceeding *pro se*, the Court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Complaints filed by *pro se* litigants "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (cleaned up) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Nevertheless, a *pro se* plaintiff "must still plead enough facts to state a claim

to relief that is plausible on its face." *Owens v. City of New York*, No. 14-CV-00966 (KBF), 2015 WL 715841, at *1 (S.D.N.Y. Feb. 19, 2015) (citing *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). Moreover, *pro se* plaintiffs "cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. N.Y. State Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

Construed liberally, the SAC asserts claims under 42 U.S.C. § 1983 for violations of Plaintiff's Fourteenth Amendment rights, as well as state law tort claims, including intentional infliction of emotional distress, negligent infliction of emotional distress and negligence. (SAC ¶¶ 56-64, 68, 77, 80, 83; Pl.'s 3/27/25 Decl. ¶¶ 260-85.) The Court first considers the Section 1983 claims against the Individual Defendants and the City. Then, the Court considers the state law tort claims.

### I. Section 1983 Claims

Defendants seek dismissal of Plaintiff's Section 1983 claims on the ground that Plaintiff failed to exhaust his administrative remedies. (Defs.' 1/10/25 Mem. at 5-8.) Thus, before turning to the merits of Plaintiff's Section 1983 claims, the Court must consider the issue of exhaustion.

#### A. Exhaustion

Under the Prison Litigation Reform Act of 1995 (the "PLRA"), "[n]o action shall be brought with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42

U.S.C. § 1997e(a).[9] The administrative remedies must be "available." *Ross v. Blake*, 578 U.S. 632, 641 (2016). An administrative procedure is unavailable when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122-24 (2d Cir. 2016) (quoting *Ross*, 578 U.S. at 633-34).

Exhaustion is an affirmative defense, not a pleading requirement. *Jones v. Bock*, 549 U.S. 199, 216 (2007). "Accordingly, 'inmates are not required to specifically plead or demonstrate exhaustion in their complaints.'" *Williams*, 829 F.3d at 122 (citing *Jones*, 549 U.S. at 216). "However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Id.* (citation omitted). "Nonexhaustion is apparent from the face of a complaint when the plaintiff admits that he did not file a grievance[,] . . . [b]ut when a plaintiff claims to have filed a grievance, even if he did not plead to have followed all the steps required, nonexhaustion is not apparent." *Howard v. Brown*, No. 15-CV-09930 (ER), 2018 WL 3611986, at *2 (S.D.N.Y. July 26, 2018) (cleaned up). In addition, nonexhaustion may not be apparent when a plaintiff alleges that he attempted to file a grievance and prison officials prevented him from doing so. *See id*. at *3 n. 5 (citing cases). "If ambiguity exists as to whether a plaintiff exhausted

[9] The PLRA exhaustion requirement applies to pretrial detainees. *See Dickinson v. York*, 828 F. App'x 780, 782 (2d Cir. 2020) (applying exhaustion requirement to pretrial detainee); *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 173 (2d Cir. 2006) (same).

his administrative remedies, courts generally deny motions to dismiss on this ground." *King v. Falco*, No. 16-CV-06315 (VB), 2018 WL 6510809, at *6 (S.D.N.Y. Dec. 11, 2018) (cleaned up).

In the present case, the failure to exhaust defense does not appear on the face of the SAC, as supplemented by Plaintiff's Declaration. In the SAC, Plaintiff alleges that "[i]n each listed cause of action, to the fullest extent that he was allowed to do so, Plaintiff did in fact fully exhaust all administrative remedies that was made available to him to no avail." (SAC ¶ 13.) In their moving memorandum, Defendants seek dismissal of "all of Plaintiff's claims" on exhaustion grounds. (*See* Defs.' 1/10/25 Mem. at 8.)

In his Declaration in opposition to Defendants' motion to dismiss, Plaintiff annexes as exhibits certain documents regarding strip search-related grievances. (*See* Pl.'s Decl., Ex. A to G (PDF pp. 63-81).) In addition, Plaintiff asserts in his Declaration that, in some instances, he was told there were no available grievance forms. (Pl.'s 3/27/25 Decl. ¶¶ 13, 21.) At other times, when he was given grievance forms, Plaintiff alleges that they were never submitted or investigated and, thus, he was not able to appeal. (*Id.* ¶¶ 16, 17, 19.) When Plaintiff did submit a grievance, he appealed and received a final decision. (*Id.* ¶ 35-39.) On another occasion, Plaintiff was told that his grievance was related to a "non-grievable issue." (*Id.* ¶ 24.)

In their reply memorandum, Defendants limit their argument by stating that "Plaintiff has not shown full exhaustion under the PLRA for the October 11, 2022 confinement."[10] (Defs.' 4/25/25 Reply at 2.) Regardless, the Court finds that Plaintiff's purported failure to exhaust is not clear on the face of the SAC either with respect to the October 11, 2022 confinement or

[10] In their reply memorandum, Defendants appear to "acknowledge" exhaustion regarding the August 13, 2020 and June 9, 2021 confinements. (*See* Defs.' 4/25/25 Reply at 2 n.1.)

otherwise. Accordingly, it is recommended that Defendants' motion to dismiss be denied with respect to the PLRA exhaustion requirement.[11]

**B. <u>Section 1983 Legal Standards</u>**

To state a Section 1983 claim, a plaintiff must show that he was deprived of a constitutionally protected right by an individual acting under color of state law.[12] *See Ortiz v. Parkchester North Condo.*, No. 16-CV-09646 (VSB), 2018 WL 2976011, at *3 (S.D.N.Y. June 13, 2018) (citing *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002)). A plaintiff may assert a Section 1983 claim against a municipality when an official policy or custom caused the deprivation of a constitutional right. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).

**C. <u>Alleged Deprivations of Constitutional Rights By The Individual Defendants</u>**

Plaintiff's Section 1983 claims properly are construed to allege two types of deliberate indifference claims under the Fourteenth Amendment, *i.e.*, deliberate indifference to conditions of confinement and deliberate indifference to medical needs, as well as substantive and procedural due process claims, which are addressed in turn below.[13]

**1. <u>Deliberate Indifference To Conditions Of Confinement</u>**

Plaintiff alleges that the Individual Defendants acted with deliberate indifference with respect to the conditions of his confinement beginning on October 11, 2022. (SAC ¶¶ 64-82.) "A

---

[11] Defendants will be able to raise their PLRA exhaustion affirmative defense, as appropriate, at a later stage of the case.

[12] The Individual Defendants were individuals acting under color of state law because they were officers of NYCDOC. *See Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010).

[13] Because Plaintiff was a pre-trial detainee at the time he was allegedly denied adequate medical care, and during his confinement (SAC ¶ 1), Plaintiff's claims fall under "the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims are evaluated under the Due Process Clause [of the Fourteenth Amendment] because, [p]retrial detainees have not

pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29. A plaintiff must satisfy two prongs: an objective prong and a subjective prong. *See id*. First, the objective prong requires showing that the conditions were "sufficiently serious to constitute objective deprivations of the right to due process." *Id.* An objective deprivation exists when the "conditions, either alone or in combination, pose an unreasonable risk of serious damage to [the plaintiff's] health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).[14] Detainees should not be deprived of their basic human needs, which includes food, shelter and medical care. *See Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012).

The Court finds that Plaintiff plausibly has alleged the objective prong of deliberate indifference regarding the October 11, 2022 confinement. Plaintiff alleges that between October 11, 2022 and May 23, 2024, he was deprived of potable drinking water. (*See* SAC ¶ 51.) He also alleges that he was served "cold, under or overcooked food, or none at all." (*Id*.) The provision of cold food, by itself, is not a constitutional violation, so long as it is nutritionally adequate. *See Waring v. Meachum*, 175 F. Supp. 2d 230, 239 (D. Conn. 2001); *see also Anduze v. City of New York*, No. 21-CV-00519 (PGG) (KHP), 2022 WL 4586967, at *11 (S.D.N.Y. Aug. 8, 2022), *report and recommendation adopted*, 2022 WL 4547420 (S.D.N.Y. Sept. 29, 2022) (allegations that plaintiff served cold food without food handling certificate insufficient to allege constitutional violation) (citing *Smith v. Westchester County*, 2021 WL 2856515, at *8 (S.D.N.Y. July 7, 2021) ("[F]ood

---

been convicted of a crime and thus may not be punished in any manner – neither cruelly and unusually nor otherwise.") (cleaned up).

[14] While *Walker* is evaluating a claim under the Eighth Amendment, the same standard applies under the Fourteenth Amendment. *See Darnell*, 849 F.3d at 30.

merely served cold or in an unpleasing manner is too frivolous of a claim to constitute a constitutional violation.")). However, to the extent that Plaintiff alleges that he was deprived of potable water and nutritionally adequate food, such allegations satisfy the objective prong for establishing deliberate indifference under the Fourteenth Amendment, since Plaintiff had been deprived of basic human needs. *See Atadzhanov v. City of New York*, No. 21-CV-5098 (LJL), 2022 WL 4331304, at *7 (S.D.N.Y. Sept. 19, 2022) (allegations that plaintiff received no food for certain mealtimes sufficient to establish objective prong). Additionally, allegations that Plaintiff was forced to live in a cell with vermin and dangerous odors satisfy the objective prong. *See Edwards v. Arocho*, 125 F.4th 336, 351 (2d Cir. 2024) (finding, on motion to dismiss, that plaintiff's allegations that he was "compelled to live in a prison cell coated in black mold and overrun by vermin [was] enough to establish an objective deprivation that posed a serious health *risk*, which is all that [plaintiff] was required to allege under the objective prong of the constitutional test").

The subjective prong considers whether a defendant acted with deliberate indifference to the challenged condition. *See Darnell*, 849 F.3d at 29. To establish that a defendant acted with deliberate indifference, a plaintiff must show that the defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee" despite knowledge that the condition "posed an excessive risk to health or safety." *Id.* at 35. "In other words, the 'subjective prong' (or '*mens rea* prong') of a deliberate indifference claim is defined objectively." *Id.*

Here, Plaintiff alleges that Lemon assigned him to the RHU cell where he stayed between October 11, 2022 and May 23, 2024. (SAC ¶¶ 18, 30.) According to the SAC, Plaintiff was told by the security captain on duty at NIC that Lemon (who was the Chief of Security of the NYCDOC (*id.*

¶ 5)) decided to house Plaintiff in the RHU. (*Id*. ¶ 18.) Additionally, when Plaintiff requested a change of cell assignment due to poor conditions, Plaintiff was told that only Lemon could authorize a cell change. (*Id.* ¶ 19; *see also id*. ¶ 31 (when Plaintiff requested move to general population, he was told "This is where Chief Lemon wants you housed, according to him you are going to remain here until you are discharged from NYCDOC custody.").) Based upon these allegations a reasonable inference can be drawn that Lemon was aware of Plaintiff's housing assignment and conditions, and had the authority to change them, and at least recklessly failed to act. Accordingly, it is recommended that Defendants' motion to dismiss Plaintiff's Section 1983 conditions of confinement claim against Lemon arising out of the October 11, 2022 confinement be denied.

With respect to Miller, however, the Court finds that Plaintiff plausibly has not alleged the subjective prong of deliberate indifference as to the October 11, 2022 confinement. Plaintiff alleges in a conclusory manner that Miller (who was the Acting Warden of NIC (SAC ¶ 6)) "willfully executed" housing decisions made by Lemon, and that Miller "conspired" with Lemon. (SAC ¶¶ 31, 59.) However, Plaintiff has not plausibly alleged specific facts regarding Miller's personal involvement in Plaintiff's October 11, 2022 confinement, and thus has not met the subjective prong with respect to Miller. *See Locicero v. O'Connell*, 419 F. Supp. 2d 521, 528 (S.D.N.Y. 2006) ("to survive a motion to dismiss, [plaintiff] must have alleged a set of facts that, assuming their veracity, demonstrate that a [charged official] knew of and disregarded the excessive risk [that allegedly dangerous individual] posed to inmate health and safety"); *see also Iqbal*, 556 U.S. at

678. Accordingly, it is recommended that Defendants' motion to dismiss Plaintiff's Section 1983 conditions of confinement claim against Miller be granted.[15]

**2. Deliberate Indifference To Medical Needs**

Plaintiff alleges that the Individual Defendants were deliberately indifferent to his medical needs by denying and delaying dental care to him. (*See* SAC ¶¶ 72, 74.) Again, to plead a deliberate indifference claim, Plaintiff must satisfy two prongs: (1) the plaintiff must satisfy the objective prong by showing a sufficiently serious need, and (2) the plaintiff must meet the subjective prong, which requires the officer to have acted with deliberate indifference to the challenged condition. *See Darnell*, 849 F.3d at 29.

The objective prong requires "that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious'—that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)). Plaintiff alleges that he had dental pain and, specifically, a lingering throbbing pain after eating or drinking. (SAC ¶ 32.) Furthermore, he stated that he had "severe pain from two partially exposed nerves where one filling broke and fell out, and a temporary filling eroded away." (Pl.'s 3/27/25 Decl. ¶ 94.) Accepting these allegations as true, Plaintiff has met the objective prong. *See Chance v. Armstrong*, 143 F.3d 698, 702-03 (2d Cir. 1998) (allegations of continuous "great pain" and inability to chew properly sufficient to withstand motion to dismiss).

[15] In opposition to Defendants' motion, Plaintiff also described the unsafe conditions of the cells during his August 13, 2020 and June 9, 2021 confinements. (Pl.'s 3/27/25 Decl. ¶¶ 120-32.) However, he does not allege that the Individual Defendants were aware of the conditions of such confinements, and as such Plaintiff does not meet the subjective prong of deliberate indifference as to these confinements with respect to either of the Individual Defendants.

With respect to the second prong, "[a]fter *Darnell*, 'deliberate indifference' is now 'defined objectively,' and the 'Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of serious harm.'" *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 718 (S.D.N.Y. 2017) (quoting *Darnell*, 849 F.3d at 35). A pretrial detainee suing for deliberate indifference under the Fourteenth Amendment "is required to show only that the prison official acted with objective recklessness, or that the defendant 'knew or should have known' that 'an excessive risk to health or safety' would result." *Grimmett v. Corizon Med. Assocs. of New York*, No. 15-CV-07351 (JPO), 2017 WL 2274485, *4 (S.D.N.Y. May 24, 2017) (quoting *Darnell*, 849 F.3d at 35).

Plaintiff asserts that he was denied medical care because he refused to submit to strip searches with visual body cavity searches, which he asserts were unconstitutional. (*See* Pl.'s 3/27/25 Decl. ¶ 65; SAC ¶ 35.) Plaintiff alleges that, in anticipation of a dental visit, he slid a letter under Miller's office door, which detailed non-degrading methods to search for contraband. (SAC ¶ 34.) However, the captain of the transporting team told Plaintiff that Miller "made it clear" that if Plaintiff did not strip naked he would not receive medical attention. (*Id*. ¶ 35.) In these circumstances, Plaintiff plausibly has alleged that Miller knew or should have known that there was an excessive risk to Plaintiff's health or safety by requiring the searches.[16] The next inquiry is whether Plaintiff plausibly has alleged that the searches were unconstitutional.

The Fourth Amendment, which is applicable to the states through the Fourteenth Amendment, see *Minnesota v. Dickerson,* 508 U.S. 366, 372, (1993), prohibits unreasonable

[16] Plaintiff does not allege that Lemon had personal involvement in the strip search requirement and thus Lemon cannot be liable with respect to Plaintiff's deliberate indifference to medical needs claim.

searches of persons. *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated[.]"). "This fundamental protection is not lost by inmates merely as a consequence of their incarceration." *Davidson v. Kyle*, No. 01-CV-00706 (WMS), 2004 WL 941458, at *3 (W.D.N.Y. Mar. 30, 2004) (citing *Hudson v. Palmer,* 468 U.S. 517, 523 (1984) (prisoners retain rights that are not fundamentally inconsistent with imprisonment or incompatible with the objectives of incarceration)). A visual body cavity search is a "'serious invasion of privacy.'" *Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016) (quoting *Florence v. Bd. Of Chosen Freeholders*, 566 U.S. 318, 343 (2012) (Breyer, J., dissenting)). "One of the clearest forms of degradation in Western Society is to strip a person of his clothes. The right to be free from strip searches and degrading body inspections is thus basic to the concept of privacy." *Harris*, 818 F.3d at 58-59 (citations omitted) (cleaned up) (citing *Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994)). However, when there are legitimate security interests being served, visual body cavity inspections may be constitutional. *Bell*, 441 U.S. at 560. A court should be deferential to correctional officials if the search serves a legitimate penological goal. *Florence*, 566 U.S. at 326.

"Generally, strip searches have been upheld as a reasonable security measure within a correctional facility even in the absence of probable cause as long as they are related to a legitimate penological goal." *Smith v. City of New York*, No. 14-CV-05934 (JCF), 2015 WL 3929621, at *2 (S.D.N.Y. June 17, 2015) (citing *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), *aff'd*, 461 F. App'x 18 (2d Cir. 2012)). "A strip search is unconstitutional, however, if it does not serve a legitimate penological goal, such as if it is meant to intimidate, harass, or punish[.]"

*Lesane v. City of New York*, No. 11-CV-02104 (HB), 2011 WL 5242721, at *2 (S.D.N.Y. Nov. 3, 2011) (citing *Covino v. Patrissi*, 967 F.2d 73, 79 (2d Cir. 1992)).

In the present case, Defendants argue that the searches were part of a regular prison practice pursuant to a "legitimate penological interest" of detecting contraband on the way to and from outside appearances.[17] (Defs.' 1/10/25 Mem. at 10-11.) Plaintiff argues that the searches were not in accordance with NYCDOC policy, which did not require inmates to undergo a strip search with visual body cavity search. (Pl.'s 3/27/25 Decl. ¶¶ 63-66.) Plaintiff alleges that the searches were intended to "debase, degrade, and humiliate" him, and that there were other less invasive options available to conduct the searches. (*Id*. ¶¶ 66-68, 85.)

Defendants do not address how conducting a visual body cavity search before detainees like Plaintiff, who were housed in the RHU, left the facility for medical treatment served a penological goal of the facility. Plaintiff alleges that, in the RHU, he was under 24-hour surveillance by his assigned security watch officer, the tier duty officer and security cameras (Pl.'s 3/27/25 Decl. ¶ 76), suggesting that he could not have obtained contraband while housed in the RHU. Moreover, Plaintiff alleges that there are other methods available for contraband searches that were less intrusive than strip searches, such as body scanners, line scanners, metal detectors and pat frisks, which he was willing to undergo instead of a strip search. (SAC ¶ 34.) Thus, construing the allegations in the light most favorable to Plaintiff, Plaintiff plausibly has alleged

[17] Plaintiff does not allege that he was subject to search coming back into the facility, which would raise different considerations. *See Perez v. New York State Dep't of Corr.*, 448 F. App'x 152, 153 (2d Cir. 2012) (citing *Bell*, 441 U.S. at 558) ("[T]he Supreme Court [has] held that the Fourth Amendment does not prohibit routine strip searches of inmates involving exposure of body cavities for visual inspection subsequent to every contact visit from outside the institution, provided such searches are conducted in a reasonable manner.").

that Miller's requirement of a strip search as a condition to Plaintiff receiving medical treatment was unconstitutional. *See Lesane*, 2011 WL 5242721, at *2 (citations omitted) ("[S]trip searches made after a prisoner has had no opportunity to acquire contraband, generally do not serve a reasonable penological goal and are held unconstitutional.").

Accordingly, Plaintiff plausibly has alleged that Miller knew or should have known that there was an excessive risk to Plaintiff's health or safety by requiring unconstitutional searches, thus satisfying the subjective prong as to Miller.[18] *See Darnell*, 849 F.3d at 35. Accordingly, it is recommended that Defendants' motion to dismiss be denied with respect to Plaintiff's deliberate indifference to medical needs claim against Miller, but that it be granted to the extent it is pled against Lemon.

**3. <u>Substantive And Procedural Due Process Claims</u>**

"[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535. Thus, in assessing whether restrictions on pretrial detainees comport with substantive due process, "[a] court must decide whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id*. at 538.[19] In the context of a pretrial

[18] The decision cited by Defendants in their moving memorandum, *Davidson v. Kyle*, No. 01-CV-0706S (WMS), 2004 WL 941458 (W.D.N.Y. Mar. 30, 2004) (*see* Defs.' 1/10/25 Mem. at 9), is distinguishable. In *Davidson*, the court held that the plaintiff in that case could not demonstrate that Defendants acted with a sufficiently culpable state of mind to meet the deliberate indifference standard because "the only reason Plaintiff was prevented from attending his outside medical appointments was because he refused to submit to the [required] strip frisks." *Id*. at *7. In *Davidson*, the court found "that the strip frisks at issue did not violate Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure." *Id*. at *4. Here, by contrast, as set forth in the above, the Court finds that Plaintiff plausibly has alleged that the required strip searches were unconstitutional.

[19] "A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether . . . by deliberate indifference to conditions of confinement, or otherwise." *Darnell*, 849 F.3d at 35. A pretrial

detainee's claim against restrictive conditions of confinement, the Second Circuit has made clear that administrative segregation measures do not "violate substantive due process where prison officials subject[ ] pretrial detainees to such measures in response to specific evidence that those detainees posed a risk to institutional security, and where the measures were not excessive in relation to that purpose." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 56 (2d Cir. 2017).

In the present case, it is undisputed that Plaintiff escaped from custody on two separate occasions, *i.e.*, on June 18, 2020 and June 21, 2020. (Pl.'s 3/27/25 Decl. ¶¶ 16, 45.) Given these escapes, placing Plaintiff in the SHU during his August 13, 2020 and June 9, 2021 confinements was not excessive. However, Defendants admit in their dismissal memorandum that "[t]he October 11, 2022 confinement plaintiff alleges certainly raises questions of fact such as the length of time and conditions of the cell that prevent dismissal at this time on [substantive due process] grounds." (Defs.' 1/10/25 Mem. at 13 n.3.) Based upon Plaintiff's allegations, the measures taken with respect to the October 11, 2022 confinement were excessive. Accordingly, it is recommended that Defendants' motion be denied with respect to the substantive due process claim against Lemon. As noted in Section I.C.1., *supra*, Plaintiff does not allege any personal involvement of Miller for his October 11, 2022 confinement.

Even where restrictive housing may be justified by legitimate objectives, procedural due process must be observed. To state a claim under Section 1983 for the denial of procedural due process, a plaintiff must allege both the existence of a protected liberty or property interest, and

detainee can state a substantive due process claim regarding the conditions of his confinement in two ways. *Id*. at 34 n.12. First, he can show that the defendants were deliberately indifferent to the conditions of his confinement. *Id*. Second, he can show that the conditions were punitive. *Id*. The deliberate indifference claims are addressed in Discussion Sections I.C.1 and I.C.2., *supra*. This section addresses whether the conditions imposed were punitive.

that he was deprived of that interest without being afforded sufficient process. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). "[A] prisoner's restricted confinement within a prison does not give rise to a liberty interest, warranting procedural due process protection, unless the conditions and duration of the prisoner's confinement 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Sealey v. Giltner*, 197 F.3d 578, 583 (2d Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (alteration in original). Confinement to segregated housing may trigger procedural due process protections, depending on the length, frequency and conditions of the confinement. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (noting that "duration and the frequency of such deprivations are highly relevant to whether the conditions of a plaintiff's confinement should be considered atypical" (citations omitted)). "District courts in this Circuit routinely hold that confinement in SHU for 30 days, under ordinary SHU conditions, does not implicate a liberty interest protected by the Due Process clause, even in the absence of detailed factual development." *Bell v. Saunders*, No. 20-CV-00256 (BKS) (TWD), 2022 WL 2064872, at *6 (N.D.N.Y. June 8, 2022) (citing cases).

In the present case, the August 13, 2020 and June 9, 2021 confinements were sufficiently short in duration that Plaintiff did not have a liberty interest protected by the Due Process clause. However, as admitted by Defendants (Defs.' 1/10/25 Mem. at 13 n.3), there are questions of fact regarding the duration of the October 11, 2022 confinement, such that the procedural due process claim cannot be dismissed with respect to that confinement. Because Lemon is alleged to have directed that Plaintiff be housed in RHU during Plaintiff's October 11, 2022 confinement (SAC ¶ 18), he is a proper defendant with respect to Plaintiff's procedural due process claim.

*Smart v. Goord*, 441 F. Supp. 2d 631, 643 (S.D.N.Y. 2006) (finding individuals proper defendants on procedural due process claims where "complaint may . . . be construed to allege that [individual defendants] were personally involved in ordering [plaintiff's] confinement in [facility]"), *on reconsideration in part*, No. 04-CV-08850, 2008 WL 591230 (S.D.N.Y. Mar. 3, 2008). As noted in Section I.C.1., *supra*, Plaintiff does not allege any personal involvement of Miller for his October 11, 2022 confinement, and thus Miller is not a proper defendant with respect to Plaintiff's procedural due process claim.

**D. Municipal Liability Claim Against The City**

A municipality cannot be held liable under Section 1983 on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).[20] Instead, a plaintiff must show that an official policy or custom caused the deprivation of a constitutional right. *See Wray*, 490 F.3d at 195. The Second Circuit has established a two-pronged test for Section 1983 claims brought against a municipality. First, the plaintiff must prove "'the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official].'" *Johnson v. City of New York*, No. 06-CV-09426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). Second, the plaintiff must establish a causal

[20] A municipal liability claim under Section 1983 commonly is referred to as a *Monell* claim, named after the U.S. Supreme Court's decision in *Monell*, 436 U.S. at 690-91, which held that a local government only can be sued under Section 1983 when execution of a government policy or custom causes injury.

connection between the policy or custom and the alleged deprivation of his constitutional rights. *Id*. (citation omitted).

With respect to the visual body cavity searches prior to his transport to medical appointments, Plaintiff alleged that DOC Directive 4508R-E states that inmates leaving the facility must undergo a strip search without a visual body cavity search. (Pl.'s 3/27/25 Decl. ¶ 64.) Plaintiff alleged that, contrary to policy, he was required to undergo a strip search with a visual body cavity search. (*Id.* ¶¶ 64-65.) Since Plaintiff alleged that the conduct was not pursuant to an official municipal policy, the municipal liability claim premised on an official policy must fail. *See Maldonado v. Schriro*, No. 15-CV-03409 (PAE), 2017 WL 2633578, at * 2 (S.D.N.Y. June 16, 2017) ("[M]unicipal liability 'under Section 1983 does not arise out of the allegedly unconstitutional acts of an employee that are *contrary* to the municipality's alleged policy.'" (emphasis in original) (citing cases)).

With respect to the conditions of confinement, Plaintiff alleges the existence of a policy of confining individuals into RHUs as evidenced by the class action lawsuit filed in this Court entitled *Miller v. City of New York*, No. 21-CV-02616. (SAC ¶¶ 65-66.) In *Miller*, Section 1983 claims were filed against the City and certain individual defendants on behalf of "[a]ll pretrial detainees who were housed in indefinite isolation confinement in West Facility, North Infirmary Command, or Manhattan Detention Complex at any time on or after March 25, 2018." (Miller Compl., 21-CV-2616 ECF No. 1, ¶¶ 105, 119-35) The case was resolved by settlement (12/30/24 Final J., ECF No. 202), and did not result in an adjudication of liability. Thus, the Miller lawsuit is "insufficient to plausibly support an inference of a widespread custom." *Tieman v. City of Newburgh*, No. 13-CV-04178 (KMK), 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015)

(dismissing *Monell* claim where plaintiff cited to other lawsuits, none of which resulted in adjudication of liability).

Alternatively, Plaintiff also may show the existence of an official policy or custom as required for municipality liability under a failure to train theory. *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011). To allege failure to train, a plaintiff must show that the failure to train amounts to deliberate indifference to the constitutional rights of the plaintiff. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). A city may be considered deliberately indifferent if policymakers maintain a training program despite notice that it is causing employees to violate individuals' constitutional rights. *Connick*, 563 U.S. at 62. Prior lawsuits may put a city on notice that better training and supervision is necessary, but a plaintiff must also plead facts about the city's response to the lawsuit. *Falls v. Orange Cnty.*, No. 17-CV-01339 (VB), 2018 WL 718417, at *4 (S.D.N.Y. Feb. 5, 2018). To plead a failure to train, some non-conclusory allegation as to a deficiency in the training program is required. *See Calderon v. City of New York*, 138 F. Supp. 3d 593, 614 (S.D.N.Y. 2015) (citing *Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012)).

Here, Plaintiff alleges that the City knew of prior lawsuits, investigations and complaints and the like. (*See* Pl.'s 3/27/25 Decl. ¶ 236.) Even if the City was put on notice by the foregoing, Plaintiff does not allege the existence of a specific deficiency in the training program, which is fatal to Plaintiff's claim for *Monell* liability under the failure to train theory. *See Calderon*, 138 F. Supp. at 614.

Accordingly, because Plaintiff fails to state a plausible claim for municipal liability, it is recommended that the Section 1983 claims against the City be dismissed.

## II. State Law Claims

Plaintiff alleges state law tort claims against Defendants, including intentional infliction of emotional distress, negligent infliction of emotional distress and negligence. (SAC ¶¶ 83-86; Pl.'s 3/27/25 Decl. at PDF pp. 53-56.) For the reasons set forth below, those claims should be dismissed without prejudice for failure to plead the notice-of-claim requirements of New York state law.

"Under New York law, a plaintiff asserting tort claims against the City or its employees must file a notice of claim within ninety days after the incident giving rise to the claim and commence the action within a year and ninety days from the date of the incident." *Brown v. City of New York*, No. 18-CV-03287 (JPO), 2020 WL 1819880, at *7 (S.D.N.Y. Apr. 9, 2020) (citing N.Y. Gen. Mun. Law §§ 50-e(1), 50-i(1)). "Although these notice of claim requirements do not apply to § 1983 claims brought in federal court, they do otherwise apply to state law claims that are brought in federal court as related to § 1983 claims." *Blue v. City of New York*, No. 14-CV-07836 (VSB), 2018 WL 1136613, at *17 (S.D.N.Y. Mar. 1, 2018). "At the pleading stage, plaintiffs must affirmatively plead compliance with the notice-of-claim requirement." *Walsh v. City of New York*, No. 19-CV-09238 (AT), 2021 WL 1226585, at *13 (S.D.N.Y. Mar. 31, 2021).

"The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement." *Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) (citing *Rattner v. Planning Comm'n of Vill. of Pleasantville*, 156 A.D.2d 521, 526 (2d Dep't 1989)). Failure to comply

with these requirements requires dismissal for failure to state a claim. *See Diarra v. City of New York*, 771 F. App'x 69, 71 (2d Cir. 2019) (citations omitted).[21]

None of Plaintiff's three pleadings contain allegations regarding his compliance with the notice-of-claim requirements. (*See generally* Compl.; Am. Compl.; SAC; *see also* Pl.'s 3/27/25 Decl. ¶ 5 (acknowledging "failure to plead the conditions precedent").) In these circumstances, Plaintiff has failed to comply with such requirements and the state law claims contained in the SAC should be dismissed. *See Perkins v. City of New York*, 26 A.D.3d 483, 485 (2d Dep't 2006) ("The failure to include in the complaint an accurate allegation that at least 30 days have elapsed since the service of the notice and that the adjustment or payment of the claim has been neglected or refused required that the complaint be dismissed[.]").

Plaintiff states in opposition to Defendants' motion to dismiss that "[d]uring or about the last week of December, 2022, Plaintiff handed the duty officer on the 2-C Tier of NIC a white envelope, with an attached Certified Mail Receipt, to be placed into the outgoing mailbox to be mailed to the City's Comptroller." (Pl.'s 3/27/25 Decl. ¶ 4.) However, Defendants represent that

---

[21] "[C]ourts disagree on whether a plaintiff must comply with the notice-of-claim requirement when bringing claims against a municipal employee for . . . [intentional infliction of emotional distress]." *Banyan v. Sikorski*, No. 17-CV-04942 (JLR), 2023 WL 1765869, at *1 n.1 (S.D.N.Y. Feb. 3, 2023) (citations omitted). However, even if no such requirement had to be met, Plaintiff still has not plausibly alleged a claim. To plausibly allege a claim for intentional infliction of emotional distress in New York, four elements must be plead: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) causal connection between the conduct and injury; and (iv) severe emotional distress." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (citation omitted). Conduct that satisfies the extreme and outrageous requirement is so extreme that it goes "beyond all possible bounds of decency" and cannot be tolerated in civilized society. *Spagnuolo v. Howell*, 814 F. App'x 614, 619 (2d Cir. 2019) (citing *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121-22 (1993)). Generally, such conduct involves public humiliation, false accusations of criminal conduct, physical threats or conduct contrary to public policy. *Stuto v. Fleishman*, 164 F.3d 820, 828 (2d Cir. 1999). Here, Plaintiff fails to allege how the Individual Defendants' conduct was extreme and outrageous. Considering New York's high threshold for conduct that qualifies as intentional infliction of emotional distress, the facts plead in the SAC do not plausibly allege a claim.

they "have not found any record of Plaintiff filing a notice of claim regarding any of these incidents." (Defs.' 1/10/25 Mem. at 23.)

If Plaintiff did indeed timely comply with the notice-of-claim requirements (at least with respect to his October 11, 2022 confinement)[22] and can substantiate as much with credible evidence (including, for example, a copy of the notice of claim and/or the certified mail receipt), he should be given leave to amend so that he can seek to establish timely compliance with the notice of claim requirements. *See Matthews v. City of New York* 889 F. Supp. 2d 418, 449 (E.D.N.Y. 2012). Because Plaintiff's state law claims will be dismissed without prejudice for failure to plead compliance with the notice of claim requirements,[23] the Court need not otherwise address the merits of these claims at this stage.

## III. Leave to Amend

The Second Circuit has counseled strongly against dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190-91 (2d Cir. 2015); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."). *Pro se* litigants "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d

[22] Although the state law claims regarding the October 11, 2022 confinement arose within 90 days of the purported December 2022 hand-off to the duty officer, the claims regarding the August 13, 2020 and June 9, 2021 confinements, as well as the visual body cavity searches, were outside the 90-day notice of claim period and should be dismissed regardless.

[23] Although the statute permits Plaintiff to make an application for leave to serve a late notice (*see* N.Y. Gen. Mun. Law § 50-e(5)), "[this] Court has no authority to permit plaintiff to file a late notice of claim." *Wheeler v. City of Middletown*, No. 16-CV-08857 (VB), 2021 WL 2206490, at *9 (S.D.N.Y. June 1, 2021) (citing *Brown v. Metro. Transp. Auth.*, 717 F. Supp. 257, 260 (S.D.N.Y. 1989)); *accord King v. City of New York*, 581 F. Supp. 3d 559, 578 n.18 (S.D.N.Y. 2022), *aff'd*, 2023 WL 2398679 (2d Cir. Mar. 8, 2023).

Cir. 2000) (citation omitted). District courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). However, "[l]eave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc*., 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 200 (2d Cir. 2007)) (internal quotation marks omitted).

Applying the relevant legal standards, the Court finds that Plaintiff should be given leave to amend the Section 1983 deliberate indifference claims against Lemon and Miller that the Court herein recommends dismissing, and should be given leave to amend his claims against the City. He also should be granted leave to amend so that he can seek to establish timely compliance with the notice of claim requirements with respect to the October 11, 2022 confinement.

The Court finds that amendment of certain of Plaintiff's claims would be futile. As discussed previously, Plaintiff is a pretrial detainee, so his claims under the Eighth Amendment should be analyzed under the Fourteenth Amendment. Accordingly, any amendment of Plaintiff's Eighth Amendment claims is futile. In addition, any amendment of the state law torts claims arising out of Plaintiff's August 13, 2020 confinement, June 9, 2021 confinement and the visual body cavity searches is futile because Plaintiff failed to give notice in accordance with New York's notice-of-claim requirements.

**CONCLUSION**

For all the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss be GRANTED IN PART and DENIED IN PART. Specifically, it is recommended that

Defendants' motion be GRANTED PART, as follows: (1) Plaintiff's claims against Vasquez and Marshall (which were abandoned) should be dismissed; (2) Plaintiff's claims against the City should be dismissed; (3) Plaintiff's Section 1983 deliberate indifference to conditions of confinement claim against Miller should be dismissed in their entirety and dismissed against Lemon only with respect to confinements other than the October 11, 2022 confinement; (4) Plaintiff's Section 1983 deliberate indifference to medical needs claim against Lemon should be dismissed in its entirety and allowed to proceed against Miller; (5) Plaintiff's substantive and procedural due process claims against Miller should be dismissed in their entirety and dismissed against Lemon only with respect to confinements other than the October 11, 2022 confinement; and (7) Plaintiff's state law tort claims should be dismissed. Finally, it is recommended that Plaintiff be given leave to file a Third Amended Complaint, as set forth in Discussion Section III, *supra*.

For the sake of clarity, if the recommendations made herein are adopted, and no further amendments are made, the following claims would remain in this case: (1) Plaintiff's Section 1983 deliberate indifference to conditions of confinement claim against Lemon only with respect to the October 11, 2022 confinement; (2) Plaintiff's Section 1983 deliberate indifference to medical needs claim against Miller; and (3) Plaintiff's substantive and procedural due process claims against Lemon with respect to the October 11, 2022 confinement.

Dated: July 16, 2025
New York, New York

**STEWART D. AARON**
**United States Magistrate Judge**

* * *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Clarke.

**THE FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).